(81 Misc. Rep. 177.)

### INDEPENDENT OWNERS' GARAGE CO. v. HIRSCH.

(Supreme Court, Appellate Term, First Department. June 18, 1913.)

CONTRACTS (§ 280*)—CONSTRUCTION—INSPECTION.

Under the contract of defendant to inspect plaintiff's electric installation for purpose of determining correctness of charges for current, he guaranteeing a saving of 10 per cent. or to refund the fee paid him for inspection, he also agreeing without extra charge to obtain the cheapest contract for plaintiff's electric current, to test its meters and examine its motors, and audit its bills when presented, and audit prior bills and obtain rebates on all overcharged bills to date, the reduction guaranteed is to arise from what defendant agrees to do, so that, there being no reduction, it is no excuse, preventing recovery of the fee paid, that plaintiff has not followed defendant's recommendation to substitute tungsten burners for old-style lamps.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1249–1280; Dec. Dig. § 280.*]

Appeal from Municipal Court, Borough of Manhattan, Fifth District.

Action by the Independent Owners' Garage Company against Oscar A. Hirsch, doing business as Electrical Consumers' Adjustment Com-

pany. From a judgment for defendant, after a trial without a jury, plaintiff appeals. Reversed, and new trial ordered.

Argued April term, 1913, before GUY, GERARD, and PAGE, JJ.

Dunlop & Smith, of New York City (Reginald Heber Smith, of New York City, of counsel), for appellant.

David Bernstein, of New York City, for respondent.

PAGE, J. The action was brought to recover $75 paid by the plaintiff, owner of an automobile garage, to the defendant. The contract between these parties was explicit, and was drawn and accepted in duplicate as follows:

"We request you to make such inspection, as may be necessary, of our electric installation, for the purpose of determining correctness of charges for current, and agree to pay your inspector $75 on presenting certificate of inspection. You guarantee a saving of at least 10 per cent. or agree to refund the fee paid. It is further understood and agreed that upon said payment, without extra charge, you will obtain the cheapest contract for our electric current, also test our meters and examine motors whenever necessary, and audit our bills for one year from date, as they are presented to you monthly; also audit all bills for past five months and guarantee to obtain rebates on all overcharged bills to date, before the termination of this contract, or to refund the fee paid herein."

At the bottom of the contract is printed in heavy type:

"Not responsible for any agreement made with solicitor other than stated herein."

It is quite evident from the wording of the contract that the saving of 10 per cent. was the inducement which led the plaintiff to enter into the agreement and pay the fee of $75. The inspection of his plant by the defendant was merely incidental to the saving and a means whereby it was to be brought about. The inspection alone was of no value to the plaintiff. The defendant expressly guarantees a saving of 10 per cent. or agrees to return the money. No attempt was made at the trial to show that any saving whatever in the plaintiff's light bills had been accomplished by the defendant, to rebut the plaintiff's testimony that no saving was made. On the contrary, the defendant attempted to prove an excuse for his failure to reduce the bills, in that he made certain recommendations to the plaintiff to change his lamps from carbon burners to tungsten or tantalum, which he says would have caused a reduction in the bills, had the plaintiff followed his recommendations. The plaintiff's reply to this attempted defense is that his contract did not require him to make any changes in his lights, and nothing of the kind was contemplated by the parties.

Any man at all familiar with electric lights knows that he could make a saving in his lighting by replacing the old style of lamps with tungsten burners, and it required no $75 inspection by the defendant to make the fact known to the plaintiff. He testified that he already knew it, and only refrained from making the change because the tungsten lamps in his opinion broke too easily. A single reading of the contract demonstrates clearly that the reduction guaranteed by the defendant was to arise from keeping a closer check upon the bills of the Edison Company, by testing the meters, examining motors, obtaining

a better contract, and auditing bills. The contract says clearly that the inspection is to be "for the purpose of determining correctness of charges for current," and any recommendations made by the defendant to the plaintiff as to changing his lights and installing a new system are immaterial. The contract guarantees a saving of at least 10 per cent. upon lighting bills or money refunded. It is proved that no saving of any kind was made, and the excuse offered is without merit.

The judgment is absolutely unsupported by the evidence, and should be reversed, and a new trial ordered, with costs to appellant to abide the event. All concur.